REQUESTED BY: Dear Senators Hoagland, Johnson, Koch and Wesely:
This is in response to your correspondence dated March 13, 1979, wherein you requested a `comprehensive constitutional review' of LB 316 in its present form in time for you to review the opinion prior to Final Reading of the bill on March 15 or 16. The time constraints imposed by your request are simply inconsistent with a comprehensive constitutional review of these complex issues.
You further requested that our opinion make reference to the following: (1) Judge Urbom's December 28, 1978, bench remarks in Woman's Services P.C., et al. v. J. JamesExon, et al., CV 78-L-289 in the United States District Court for the District of Nebraska; (2) Senator Chamber's memorandum read on the floor of the Legislature on March 13, 1979; and (3) a footnote contained in Planned Parenthood ofMissouri v. Danforth, 428 U.S. 52 (1971).
Regarding your first request, Judge Urbom's bench remarks were made pursuant to the entry of a temporary injunction. Our office represents the defendants in this litigation which is presently pending before Judge Urbom. Under these circumstances it would be highly improper and possibly a violation of DR 7-107(G) of the Code of Professional Responsibility for our office to render an opinion on the court's comments. Our opinions regarding the court's comments should be restricted to briefs and arguments addressed to the court.
As to your second request, Senator Chamber's memorandum was read on the floor of the Legislature and entered into the record. His memorandum appears to be most properly characterized as a legislative argument. Our comments on the Senator's memorandum would result in an improper intrusion by this office into the arena of legislative debate. It is the practice of this office to avoid entanglement in legislative debates and to respectfully defer to the judgment of the Legislature in resolving issues of public policy.
Thirdly, you have requested the opinion of this office on the informed consent provision of LB 316, in light of the specific language found in Danforth, supra,428 U.S. at 67, footnote 8, which provides:
 "The appellants' vagueness argument centers on the word `informed.' One might well wonder, offhand, just what `informed consent' of a patient is. The three Missouri federal judges who composed the three-judge District Court, however, were not concerned, and we are content to accept, as the meaning, the giving of information to the patient as to just what would be done and as to its consequences. To ascribe more meaning than this might well confine the attending physician in an undesired and uncomfortable straitjacket in the practice of his profession." (Emphasis ours.)
The above-quoted dicta indicates that there are perimeters to the type of information which a state may constitutionally require a physician to give to a patient who desires an abortion. In our opinion, the above-quoted footnote raises the question, but does not resolve it.
As we set forth in our prior opinions, (No. 55, March 24, 1977, and No. 38, March 5, 1979), the issue is whether the informed consent provision promotes the legitimate state interest in insuring that a woman reaches her decision to abort with full awareness of its significance and with full knowledge of its nature and consequences, without unduly burdening or restricting the decision to be made by the patient or her doctor. We pointed out in our prior opinions that the provisions at issue therein are more expansive than that in Danforth, supra, and thus the constitutionality of these provisions is certainly not clear. However, applying the above standard, it is our opinion that the informed consent provisions of LB 316 could withstand constitutional challenge.
We also base our opinion on the decision in PlannedParenthood v. Fitzpatrick, 401 F. Supp. 554 (E.D.Pa., 1975), which was affirmed by the Supreme Court. 428 U.S. 901
(1976). In a 2-1 decision, the district court upheld the constitutionality of the informed consent provision of the Pennsylvania abortion statute which provided:
 "`Informed consent' means a written statement, voluntarily entered into by the person upon whom an abortion is to be performed, whereby she specifically consents thereto. Such consent shall be deemed to be an informed consent only if it affirmatively appears in the written statement signed by the person upon whom the abortion is to be performed that she has been advised (i) that there may be detrimental physical and psychological effects which are not forseeable, (ii) of possible alternatives to abortion, including childbirth and adoption, and (iii) of the medical procedures to be used. . ." 401 F. Supp. at 583.
In analyzing the Pennsylvania statute, the court noted that the physician while informing the patient of the information required by the act is free, in the exercise of his judgment, to tailor that information to the facts of an individual case by, for example, reassuring the patient or comparing the risks of other options. Id. at 587-88.
The provisions of LB 316, while similar to the Pennsylvania statute, are not identical, in that LB 316 requires information concerning the reasonable consequences resulting from pregnancy and adoption, as well as abortion. Further, LB 316 requires information concerning the availability of agencies and services to assist a woman in carrying her pregnancy to a natural term. While the issue is uncertain, it is our opinion that the additional information required by LB 316 may be upheld as also furthering the state's interest in insuring that the woman's decision to abort is made with full awareness of its significance.
In addition, we note a possible ambiguity arising from recent amendments to section 6 of LB 316. In our recent opinion, No. 38, March 5, 1979, we described a potential vagueness problem in section 6 due to the use of two terms, `unemancipated woman under the age of eighteen' and `minor,' neither of which are defined in the act. We noted that section38-101, R.R.S. 1943, provides: `All persons under nineteen years of age are declared to be minors; but in case any person marries under the age of nineteen his minority ends.' As amended, section 6 now requires a statement of parental consultation for a `minor under the age of eighteen.' The term `minor' remains undefined in the act. The term `minor under the age of eighteen' could be construed to mean a subclass of `minors,' as defined in section 38-101, or it could be construed to be inconsistent with section38-101 due to the inconsistency of age and thus void for vagueness as not being statutorily defined.
If you desire further assistance from this office regarding specific legal questions on this legislation, please advise.